1
2
3
4
5
6
7
8
9

10     UNITED STATES DISTRICT COURT

11     SOUTHERN DISTRICT OF CALIFORNIA

12

13   MIGUEL SOSA, *et al.*,                    Case No. 13-cv-364-W(KSC)

14                          Plaintiffs,     **ORDER GRANTING**
                                            **DEFENDANTS' MOTION TO**
15        v.                                **DISMISS [DOC. 12]**

16
17   UTAH LOAN SERVICING, LLC, *et*
     *al.*,
18
19                          Defendants.

20        On February 14, 2013, Plaintiffs Miguel Sosa and Rosa Sosa commenced this

21   action against Defendants Utah Loan Servicing, LLC and Clark Terry for alleged

22   violations of the Fair Debt Collection Practices Act ("FDCPA") and California's

23   Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").  Defendants now

24   move to dismiss Plaintiffs' First Amended Complaint ("FAC").  Plaintiffs oppose.

25        The Court decides the matter on the papers submitted and without oral

26   argument.  See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS**

27   Defendants' motion to dismiss.

28   //

# I.   BACKGROUND

Sometime before November 25, 2009, Plaintiffs are "alleged to have incurred certain financial obligations to Mortgage First in the form of a 'junior loan' used by Plaintiffs to purchase a home." (FAC ¶ 25.)  The junior loan was used to purchase Plaintiffs' primary residence in October 2005.  (Id. ¶ 28.)  It was secured by a deed of trust and has never been refinanced.  (Id. ¶ 29.)

In September 2006, Plaintiffs fell behind on their loan payments and defaulted. (FAC ¶ 30.)  They allege that they "attempted to make a payment on the alleged debt on or about January 2007, however these payments were refused by the creditor." (Id. ¶ 31.)  In January 2007, the first loan creditor exercised its powers under the deed of trust, initiated a non-judicial foreclosure, and subsequently sold the home in a trustee's sale.  (Id. ¶ 32.)  Plaintiffs allege that they were "no longer legally liable for the junior loan" after the foreclosure sale.  (Id. ¶ 33.)  Plaintiffs' allegations in the FAC indicate that Defendants subsequently "purchased all rights to the defaulted junior loan that did not foreclose."  (Id. ¶ 34.)

On or about March 18, 2011, Defendants mailed a letter to Plaintiffs, which was received a few days later, that provided, in part, Plaintiffs' current balance of $84,410.56, and a "one-time special settlement offer of $2,717.97 as payment in full" that would waive the remaining balance of $81,692.59 if accepted.  (FAC ¶ 36–37.) The letter also stated the "benefit of payment," which included avoiding legal action (including judgment or garnishment of wages) and negative reporting to credit agencies. (Id.)  Plaintiffs allege that the $84,410.56 was in fact not owed and that legal action could not be taken, and thus, the letter constituted deceptive and misleading conduct. (Id. ¶¶ 39–45.)

Defendants then sent another letter dated November 4, 2011, which stated that Plaintiffs owed $65,915.93 on the junior loan.  (FAC ¶¶ 46–52.)  The letter also included a statement that "the debtor's legal responsibility to pay the debt is not generally affected by a first mortgage foreclosure."  (Id. ¶ 48.)  Plaintiffs again allege

1  that the letter contained information that is false, and thus constituted conduct that
2  is deceptive and misleading.  (Id. ¶ 48–55.)

3      Plaintiffs allege that they received four more letters—dated February 16, 2012,
4  January 15, 2013, February 12, 2013, and March 12, 2013—all indicating that Plaintiffs
5  were responsible for a remaining balance on the junior loan.  (FAC ¶¶ 56–103.)  The
6  exact remaining balance and demands indicated in these letters marginally varied from
7  letter to letter.  (Id.)  Plaintiffs maintain that the indication that they still were still
8  responsible for the junior loan in each letter—including the March 28, 2011 and
9  November 4, 2011 letters—constituted deceptive and misleading conduct by
10 Defendants.  (Id.)

11     Despite receiving these six letters throughout the course of two years, "[a]t no
12 time after March 18, 2011 did the plaintiffs pay any amount of this alleged debt." (FAC
13 ¶ 100.)  Additionally, in March 2013, Plaintiffs learned that neither Defendants nor any
14 of their predecessors "made any negative reporting to the Credit Bureaus[.]"  (Id. ¶
15 101.)

16     On February 14, 2013, Plaintiffs commenced this action, asserting claims for
17 violations of the FDCPA and the Rosenthal Act.  After Defendants filed a motion to
18 dismiss, Plaintiffs filed a FAC on August 15, 2013, asserting the same two claims.
19 Defendants now move to dismiss the FAC.  Plaintiffs oppose.

20
21 **II.    LEGAL STANDARD**

22     The court must dismiss a cause of action for failure to state a claim upon which
23 relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule
24 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729,
25 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and
26 construe them in light most favorable to the nonmoving party.  Cedars-Sanai Med. Ctr.
27 v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007).  Material
28 allegations, even if doubtful in fact, are assumed to be true.  Bell Atl. Corp. v. Twombly,

1   550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth

2   of legal conclusions merely because they are cast in the form of factual allegations."

3   Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal

4   quotation marks omitted).  In fact, the court does not need to accept any legal

5   conclusions as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

6           "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

7   detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

8   'entitlement to relief' requires more than labels and conclusions, and a formulaic

9   recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555

10   (internal citations omitted). Instead, the allegations in the complaint "must be enough

11   to raise a right to relief above the speculative level." Id. Thus, "[t]o survive a motion

12   to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

13   a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Twombly,

14   550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

15   content that allows the court to draw the reasonable inference that the defendant is

16   liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a

17   'probability requirement,' but it asks for more than a sheer possibility that a defendant

18   has acted unlawfully." Id.  A complaint may be dismissed as a matter of law either for

19   lack of a cognizable legal theory or for insufficient facts under a cognizable theory.

20   Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

21

22   **III.**     **DISCUSSION**[1]

23         **A.**     **Statute of Limitations**

24           An FDCPA claim must be brought "within one year from the date on which the

25   violation occurs." 15 U.S.C. § 1692k(d).  Similarly, any action under the Rosenthal

26

27         [1] As a preliminary matter, the Court outright rejects Plaintiffs' assertion that addressing the
statute of limitations at this stage is premature.  See Von Saher v. Norton Simon Museum of Art at

28   Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) ("A claim may be dismissed under Rule 12(b)(6) on the
ground that it is barred by the applicable statute of limitations only when 'the running of the statute
is apparent on the face of the complaint.'")

1   Act must be brought "within one year from the date of the occurrence of the violation."

2   Cal. Civ. Code § 1788.30(f).  As a general rule, "a limitations period begins to run when

3   the plaintiff knows or has reason to know of the injury which is the basis of the action."

4   Magnum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009) (quoting

5   Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1266 (9th Cir. 1998))

6   (internal quotation marks omitted).

7       In Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997), the Ninth Circuit held

8   that the statute of limitations in an FDCPA action begins to run on the filing of the

9   complaint when the alleged violation is "the bringing of the lawsuit itself."  In reaching

10  that conclusion, the court emphasized that the "result is consistent with other circuit

11  courts' interpretations of the [FDCPA] in which they have held in the analogous

12  nonfiling situation that *the Act's statute of limitations begins to run when a harassing*

13  *collection letter is mailed*."  Id. (citing Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir.

14  1995); Mattson v. U.S. W. Commc'ns, 967 F.2d 259, 261 (8th Cir. 1992)) (emphasis

15  added).  The court continued that "[t]hese courts reasoned that the purpose of the Act

16  is to regulate the actions of debt collectors; because the mailing date was a debt

17  collector's 'last opportunity to comply with the [Act], . . . the mailing of the letters,

18  therefore, triggered section 1692k(d)."  Id.  Furthermore, "the date of mailing is a date

19  which may be fixed by objective and visible standards, one which is easy to determine,

20  ascertainable by both parties, and may be easily applied."  Id. (quoting Mattson, 967

21  F.2d at 261) (internal quotation marks omitted).

22      Under either Magnum or Naas, Plaintiffs' claims are barred by the statute of

23  limitations.   The violation of the FDCPA and Rosenthal Act occurred when

24  Defendants allegedly engaged in deceptive and misleading conduct.  Specifically, they

25  did so by stating in letters that Plaintiffs owed money on the junior loan and that

26  Defendants may pursue legal action if Plaintiffs failed to satisfy the debt, when neither

27  are allegedly true.  (See FAC ¶¶ 39–42, 48–53, 58–65, 72–76, 81–86, 90–102; see also

28  Pls.' Opp'n 10:20–25, 13:4–8 ("[T]he whole purpose of these words and phrases is to

1  mislead and deceive consumers into believing that legal action can be taken").) Under

2  Magnum, Plaintiffs first knew or had reason to know of the alleged misconduct that

3  serves as the basis of this action in March 2011 when Defendants sent their first letter

4  that included the allegedly deceptive and misleading statements. See Magnum, 575

5  F.3d at 940. Consequently, March 18, 2011 is when the statute of limitations began for

6  Plaintiffs' claims, and it expired one year later on March 18, 2012. See id.; see also 15

7  U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f). It does not begin, as Plaintiffs argue

8  (Pls.' Opp'n 5:7–6:2), at some point of Plaintiffs' choosing just because a letter

9  addressing the same alleged misconduct was sent within the last year. See Magnum,

10  575 F.3d at 940. The Court reaches the same conclusion under Naas because the

11  March 18, 2011 letter is the first "harassing letter" that Defendants sent to Plaintiffs.

12  See Naas, 130 F.3d at 893; see also 15 U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f).

13      Given that the statute of limitations began on March 18, 2011 and this action

14  commenced almost two years later on February 14, 2013, Plaintiffs' claims for violations

15  of the FDCPA and Rosenthal Act are time-barred. See 15 U.S.C. § 1692k(d); Cal. Civ.

16  Code § 1788.30(f); Magnum, 575 F.3d at 940; Naas, 130 F.3d at 893.

17

18      **B.    Continuing Violation Doctrine**

19      Courts have held that the "continuing violation" doctrine applies to debt-

20  collection claims under appropriate circumstances. Joseph v. J.J. Mac Intyre

21  Companies, L.L.C., 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003); Komarova v. Nat'l

22  Credit Acceptance, Inc., 175 Cal. App. 4th 324, 344 (2009). The doctrine permits

23  recovery "for actions that take place outside the limitations period if these actions are

24  sufficiently linked to unlawful conduct within the limitations period[.]" Komarova, 175

25  Cal. App. 4th at 343 (quoting Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 812

26  (2001)) (internal quotation marks omitted). "The key is whether the conduct

27  complained of constitutes a continuing pattern and course of conduct as opposed to

28  unrelated discrete acts." Joseph, 281 F. Supp. 2d at 1161. "If there is a pattern, then

1   the suit is timely if the action is filed within one year of the most recent date on which

2   the defendant is alleged to have violated the FDCPA, and the entire course of conduct

3   is at issue." Id. (citation and internal quotation marks omitted).  Debt collection

4   activities, such as "a phone call at midnight, or a threatening call to a consumer's

5   employer," are discrete acts, but "repeated harassing phone calls" may constitute a

6   continuing pattern. Komarova, 175 Cal. App. 4th at 344.

7       After reciting the doctrine presented in Joseph, Plaintiffs continue that

8           Defendant argues that in the case of letters with the same
            general threat, Plaintiff is prohibited from bringing a claim
9           unless brought within one year of the very first
            communication.  In support of this contention Defendants
10          [sic] cite several out-of-state district court decisions which
            have not been widely followed.  The court in Joseph
11          referenced a New York case where the court implied that it
            would allow a continuing violation argument, based on a
12          series of threatening letters, each of which violate the
            FDCPA and only some of which are time-barred.[]  The
13          situation discussed in Sierra is what we have here, a series of
            threatening letters, each of which violate the FDCPA.

14  (Pls.' Opp'n 4:24–5:6 (citation omitted).)  That is the entirety of Plaintiffs' "argument"

15  invoking the continuing violation doctrine.

16      After reviewing Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y.

17  1999), it is unclear how that case supports Plaintiffs' argument.  In fact, in Sierra, the

18  court explicitly states that it "is not a case where defendants have sent a series of

19  threatening letter, each of which violate the FDCPA and only some of which are time-

20  barred[,]" but rather the violation is the "unfair and illegal" attorneys' fees authorized

21  by an agreement that the plaintiff breached.  Sierra, 48 F. Supp. 2d at 395.  Sierra

22  simply is not relevant here.

23      Plaintiffs also cite Joseph to support their continuing-violation argument.  Joseph

24  involved a debt-collection agency that made over 200 calls to the plaintiff's residence

25  during a nineteen-month period, several of which were made after the plaintiffs clearly

26  instructed the defendant to not call her anymore.  Joseph, 281 F. Supp. 2d at 1161-62.

27  Approximately 75 of the 200 calls were within the limitations period.  Id.  The court

28  eventually concluded that "there were still a sufficient number of calls over a two-and-

one-half year period to constitute a pattern of related conduct, triggering the continuing violation doctrine." Id. The alleged misconduct here—sending six letters over a two-year period—is a stark difference from the misconduct found in Joseph. See id.

An appropriate "continuing pattern" or "course of conduct," like those described in the cases cited by Plaintiffs, cannot be found based on the facts alleged in this case because Defendants' activities toward Plaintiffs are more akin to discrete acts over an extended period of time. See Basich v. Patenaude & Felix, APC, No. 11-cv-4406, 2013 WL 1755484, at *5-6 (N.D. Cal. Apr. 24, 2013). The facts here show a rather limited amount of contact over a two-year period. Therefore, Plaintiffs fail to show that the continuing violation doctrine applies here.

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' FAC in its entirety. See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where . . . amendment would be futile.").

**IT IS SO ORDERED.**

**DATE: January 10, 2014**

_____
**HON. THOMAS J. WHELAN**
United States District Court
Southern District of California